**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JOHN ROBERT SCHULTZ, #369821     \*

        Plaintiff     \*

      v.     \*     Civil Action No. GLR-12-3613

WARDEN WAYNE WEBB, et al.     \*

        Defendants     \*

          \*\*\*

## <u>MEMORANDUM OPINION</u>

Pending are Motions to Dismiss or for Summary Judgment filed on behalf of Defendants Bishop and Webb ("Correctional Defendants") (ECF No. 15) and Defendant Joubert (ECF No. 18). Although he was advised of his right to file a response in opposition to Defendants' motions and of the consequences of failing to do so, Plaintiff has not filed anything further in this case. <u>See</u> ECF Nos. 16 and 19. The Court finds a hearing in this matter unnecessary. <u>See</u> Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the motions shall be granted and judgment shall be entered in favor of Defendants.

**Background**

Plaintiff John Robert Schultz ("Schultz"), an inmate committed to the custody of the Maryland Department of Public Safety and Correctional Services, asserts that while confined to Maryland Correctional Training Center ("MCTC") in March 2012, it was determined by medical staff that he had "double incontinence" for which he was given adult diapers and single cell status for one year. ECF No. 1 at p. 3. On April 21, 2012, Schultz was transferred to Maryland Correctional Institution Hagerstown ("MCIH") where he was given a single cell, but began experiencing difficulties with receiving supplies from medical staff. <u>Id.</u> Schultz claims he began

filing administrative remedy procedure requests ("ARPs"), to no avail. He alleges he was placed in an isolation cell for 21 days with no lights or electricity where he contracted MRSA.

Schultz further claims that when he was taken out of segregated confinement he was put back into a single cell, but was still having problems getting supplies. Medical staff then removed him from single cell status in retaliation for filing numerous ARPs regarding medical staff. ECF No. 1 at p. 3. He asserts that after he wrote to Joe Washington, the director of inmate health services, it was determined that he would be put back into a single cell, treated for his disability, and given supplies. Additionally, he claims it was determined that he would be sent to a specialist regarding his incontinence. Id. at p. 4.

On September 13, 2012, Schultz states he was transferred to Western Correctional Institution ("WCI") where he was "assaulted" by Defendant Ava Joubert, M.D. ("Joubert"). Id. He claims Joubert "stuck two fingers into [his] anus" after being told not to do so and refused to allow Schultz to be seen by a male doctor "for religious purposes." Schultz claims his request for a male doctor was refused despite the availability of Dr. Yahya, who is male. Id.

Schultz further claims that Joubert issued an order for a single cell for 60 days pending results from a specialist, but the utilization management refused to send Schultz for the consultation and recommended alternative treatments. Schultz states that he is currently double celled which has created a "hostile environment" for him as he is constantly embarrassed when he must change his diapers in front of other inmates and encounters confrontation from inmates due to the smell. Id.

Correctional Defendants assert that while Schultz was confined at MCIH, he was never placed in an isolation cell as he alleges, but was provided a single cell due to his medical conditions. ECF No. 15 at Ex. 1, p. 1. Additionally, they assert he never contracted MRSA, but

suffered a large boil on his lower right buttock area.  Id.  A review of maintenance records for all cells to which Schultz was assigned during his stay at MCIH reveal no reports of a lack of lighting or electricity.  Id. at p. 2.  Defendants note that a lack of lighting is a security breach that would be immediately reported by correctional officers to the maintenance department, and immediate repair would have followed the report.  Id.

Defendant Joubert states Schultz was transferred to WCI on September 13, 2012.  She saw him for the first time on October 2, 2012, for chronic health issues which include hyperlipidemia, insulin dependent diabetes mellitus, hypertension, peripheral neuropathy, bladder hypertonicity, bipolar disorder, and depression.  ECF No. 18 at Ex. 2, p. 2.  During her initial evaluation, Joubert states Schultz reported bowel and bladder incontinence; however, Joubert noted no apparent physiological cause for the condition.  Id.  Schultz attributed his fecal incontinence to diabetic neuropathy which he reported extended from his feet to his waist.  ECF No. 18 at Ex. 1, p. 27.  Upon examination, however, it was established that Schultz's neuropathy extended only from his feet to his ankle.  Id. at p. 36.

In order to evaluate a possible cause for Schultz's fecal incontinence, Joubert advised Schultz his examination would include a digital rectal exam.  Id. at Ex. 2, p. 2.  She states that Schultz did not object to the examination, voluntarily undressed, and assumed the appropriate position for completion of the exam.  Id.  The results of the examination revealed no abnormalities with normal sphincter tone and prostate.  Id.  Additionally, Schultz was not suffering from hemorrhoids, fissures, or skin abnormalities and a test for occult blood proved negative.  Id.  Joubert requested a urology and neurology consultation to evaluate Schultz's incontinence and issued a temporary single cell assignment for 60 days.  Id.

Joubert's consultation request was reviewed by the medical director at WCI, Dr. Colin Ottey, who deferred approval of the request and recommended alternative management be pursued before sending Schultz to a specialist. Id. at p. 3. Schultz was informed of this decision on October 10, 2012, when he was told he would need to complete bladder training exercises for his neurogenic bladder and continue taking medication to improve bladder incontinence. Schultz was further advised that he would be issued a 60-day supply of adult diapers, but that his request for wipes, medi-air sanitizer, and liquid soap would not be approved as there was no medical need for the items. Schultz then acknowledged he could practice controlling his stool and that his bowel incontinence only occurred at night while sleeping. Id. Additionally, Schultz admitted he was non-compliant with his diabetes treatment and that he refused to take his insulin on occasion. Schultz was advised of the importance of complying with the treatment plan to control his diabetes and hypertension. Id. On October 21, 2012, Joubert noted Schultz's single cell assignment would remain in effect until otherwise discontinued despite the deferred approval on the consultation requests. Id.

On November 15, 2012, Schultz was seen by Dr. Ali Yahya, who also performed a digital rectal exam revealing a normal anus and anal sphincter with no masses present. Id. at p. 4. A repeat test for occult bleeding was performed and was again negative. Based on this examination, Dr. Yahya concluded it was very unlikely that Schultz actually had fecal incontinence and that he may be using the incontinence as a means to obtain a single cell. Dr. Yahya then recommended that Schultz be continued on his prescribed medication for urinary incontinence, but determined there was no medical indication for continuing Schultz's single cell assignment. Id.

On January 14, 2013, Joubert renewed and extended Schultz's adult diaper supply for one year. On April 7, 2013, Dr. Ottey recommended a six month single cell assignment which was approved on April 12, 2013. At that time Schultz reported that his incontinence had improved because his diabetes was better controlled. Id. Schultz continues to be seen regularly by medical staff in the chronic care clinic for purposes of treating his chronic medical conditions. Id.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal

quotation marks omitted) (quoting <u>Drewitt v. Pratt</u>, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986)).

**Analysis**

<u>Conditions of Confinement</u>

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." <u>Id.</u>

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

<u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." <u>Iko v. Shreve</u>, 535 F.3d 225, 238 (4th Cir. 2008) citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298-300 (1991).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. <u>See Wilson</u>, 501 U.S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." <u>Brown v. North Carolina Dept. of Corrections</u>, 612 F.3d 720, 723 (4th Cir. 2010), quoting <u>Case v. Ahitow</u>, 301 F.3d 605, 607 (7th Cir. 2002). Conduct is not actionable under the Eighth Amendment

unless it transgresses bright lines of clearly-established pre-existing law. See <u>Maciariello v. Sumner</u>, 973 F.2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." <u>De'Lonta v. Angelone</u>, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. See <u>Odom v. South Carolina Dept. of Corrections</u>, 349 F.3d 765, 770 (4th Cir. 2003).

Correctional Defendants assert, and Schultz fails to dispute, at no time was Schultz housed in a cell that lacked lights or electricity. Additionally, there is no evidence that Schultz suffered an injury or contracted MRSA as a result of the conditions of his confinement at MCIH. With respect to Schultz's assignment to a single cell, Correctional Defendants state that WCI is a double cell institution with shortages on bed space. ECF No. 15 at Ex. 4, p. 1. Only those inmates who are determined to require a single cell by the Medical and Psychology Departments are provided one. <u>Id.</u> Schultz was evaluated and it was determined he had no medical need for a single cell. <u>Id</u>. Based on the undisputed evidence, Correctional Defendants are entitled to summary judgment in their favor.

<u>Medical Claim</u>

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." <u>De'Lonta</u>, 330 F.3d at 633 citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff members were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. <u>See</u> <u>Farmer</u>, 511 U.S. at 839−40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." <u>Rich v. Bruce</u>, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" <u>Brice v. Virginia Beach Correctional Center</u>, 58 F.3d 101, 105 (4th Cir. 1995) quoting <u>Farmer</u>

511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. See Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. See Brown v. Harris, 240 F.3d 383, 390 (4th Cir. 2000); citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Joubert asserts, and Schultz fails to dispute, that the digital rectal exam performed on Schultz was consensual and that he voiced no objection either before or after the exam. The medical records submitted by Joubert, as well as those submitted by Correctional Defendants, establish that Schultz has been provided with adult diapers on a regular basis and that his chronic medical conditions are being treated. Schultz's disagreement with medical opinion that an outside consultation is not indicated is not a basis for an Eighth Amendment claim of deliberate indifference to a serious medical need. Accordingly, Defendant Joubert is entitled to summary judgment in her favor.

A separate Order follows.

August 21, 2013                                            /s/
                                              _____
                                              George L. Russell, III
                                              United States District Judge